THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

APPALACHIAN REGIONAL HEALTHCARE, INC.
2260 Executive Drive
Lexington, Kentucky  40505

        Plaintiff,

v.

ROBERT F. KENNEDY, JR., Secretary,
United States Department of
Health and Human Services
200 Independence Ave. S.W.
Washington, D.C. 20201, not individually
but in his official capacity as acting
Secretary, United States Department of
Health and Human Services

Serve:  Robert F. Kennedy, Jr.
       The United States Department of
       Health and Human Services
       200 Independence Ave., S.W.
       Washington, D.C. 20201

       Robert Foster
       Acting General Counsel
       The United States Department of
       Health and Human Services
       200 Independence Ave., S.W.
       Washington, D.C. 20201

       Pam Bondi
       United States Attorney General
       Department of Justice
       950 Pennsylvania Avenue, N.W.
       Washington, D.C.  20530-0001

Civil Action No. _____

| | |
|---|---|
| Paul McCaffrey | ) |
| Acting United States Attorney | ) |
| Eastern District of Kentucky | ) |
| 260 W. Vine Street, Suite 300 | ) |
| Lexington, KY  40507-1612 | ) |
| | ) |
| Civil Process Clerk | ) |
| United States Attorney's Office | ) |
| Eastern District of Kentucky | ) |
| 260 W. Vine Street, Suite 300 | ) |
| Lexington, KY  40507-1612 | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY
AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT**

**INTRODUCTION AND HISTORY**

1.     This case concerns the federal agency's decision to reduce the hospital's Medicare prospective payment system's two percent **annual payment updates** (**APUs**) and to exclude the hospital from participating in a hospital value based purchasing program.  The hospital had timely complied with all APU substantive requirements but was unable to enter the last part of its data showing its healthcare personnel had all been properly vaccinated when the government website stopped accepting that data ten hours before the announced midnight deadline.

2.     The hospital originally filed a Complaint in *Appalachian Regional Healthcare, Inc.*, Civil Action No. 5:21-cv-00138-CHB, on May 20, 2021.  In that first Complaint Plaintiff appealed from a decision of the Provider Reimbursement Review Board (**PRRB**) which, among other errors, applied the wrong section of its regulation as caused its reversal in *Pam Squared At Texarkana, LLC v. Azar*, 2020 WL364782 (D.C. Dist. 2020), and *Landmark Hospital*

2

*of Salt Lake City*, 2020 WL 999 454 (D.C. Dist. 2020). The PRRB had also improperly assigned the wrong burden of proof to the hospital and, in the absence of proof from the government, based its decision on its own speculations. After Defendants reviewed that first Complaint they expressed a desire to seek a remand "to take further action consistent with correct legal standards." The hospital concurred and a Joint Motion to Remand was filed.

3.      On **August 26, 2021**, this Court entered its Order granting remand of this matter to the PRRB for "further proceedings consistent with correct legal standards."

4.      On **March 10, 2023**, the Principal Deputy Administration for CMS ordered the case remanded to the PRRB to reconsider its March 24, 2021 final decision in light of the court remand; and

> That the Board will reconsider whether the Plaintiff timely reported influenza vaccination data to the Centers for Medicare and Medicaid Services consistent with the legal standards in 42 C.F.R. §§412.140(e); 412.434, and 419.46(g);[1] and

> That the Board will determine whether the penalties imposed by CMS in Case Nos. 18-1545, 18-1669, and 18-1802 were proper; and

> That the Board's decision will be subject to review as provided under Section 1878 of the Social Security Act and 42 C.F.R. §§405.1801, *et seq.*

5.      On **May 4, 2023**, the PRRB reopened Case Nos. 18-1545, 18-1669, and 18-1802, stating "A decision from the Board will be forthcoming."

6.      On **July 5, 2023**, Hazard ARH filed its Provider's Brief on Remand detailing again the problems with the PRRB's previous decision. The Medicare Contractor did not file a responsive brief with the PRRB.

---

[1] The provisions in 42 C.F.R. §419.46(f) in 2020 are now in subsection (g).

7.      On **July 9, 2025**, the PRRB filed its second decision (**Decision 2**), a true and correct copy is attached hereto as **Attachment A**.

8.      On July 24, 2025, Hazard ARH requested that the Administrator review and reject Decision 2 and rule in Hazard ARH's favor.

9.      On September 2, 2025, the Administrator declined to review Decision 2. Because the Secretary declined to act on Decision 2, it is final and appealable to this Court. 42 U.S.C. §1395oo(f)(1).

10.      Hazard ARH incorporates by reference its Complaint filed in Civil Action No. 5:21-cv-00138-CHB.  (**Attachment B** hereto).

## JURISDICTION AND VENUE

11.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("**APA**"), 5 U.S.C. § 551 et seq.

12.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(1).

13.      Venue is proper in this judicial district under 24 U.S.C. § 1395oo(f)(1).

14.      A reviewing court must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

## PARTIES

15.      Plaintiff  in this action is Appalachian Regional  Healthcare, Inc. d/b/a Hazard ARH Regional Medical Center, Provider No. 18-0029 (hereafter "**Hazard ARH**").  This case involves Hazard ARH's Medicare reimbursement for Fiscal Year Ends (**FYEs**) 2018 and 2019, and Calendar Year 2018.

4

16. The defendant is Robert F. Kennedy, Jr., sued in his official capacity as Secretary of the United States Department of Health and Human Services (**"Secretary"**), the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors, and the Department and its components he oversees, as the context requires.

17. The Centers for Medicare & Medicaid Services (**"CMS"**) is a component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program. References to CMS herein are meant to refer to the agency and its predecessors.

## BACKGROUND

18. Medicare is a federally-funded health insurance program primarily for individuals age 65 or older.

19. CMS has implemented its National Quality Strategy with the goal of promoting "better healthcare for individuals, better health for populations, and lower costs for healthcare services."[2] In pursuit of that goal CMS has sought "to collect data in a manner that balances the need for information related to the full spectrum of quality performance and the need to minimize the burden of data collection and reporting."[3]

20. Thus, for example, the Influenza Vaccination Coverage among healthcare personnel (**HCP**) reporting requirement at issue here was extended to inpatient psychiatric facilities (**IPFs**) in FY 2017 because CMS "believe[d] that the adoption of a measure that

---

[2] 79 Fed. Reg. 45962 (8/6/14).
[3] *Id.* at 45967.

assesses influenza vaccination among HCP in the IPF setting not only works toward improving the rate at which non-vaccinated HCP manifest symptoms as compared to vaccinated HCP, but also affords consumers and others useful information in choosing among different facilities."[4]

21.    Hazard ARH is a Medicare participating, general acute care hospital with an adjacent IPF, located in the city of Hazard in Perry County, Kentucky.  In the case-at-bar, Hazard ARH had previously submitted all its quality data to satisfy the relevant Prospective Payment System (**PPS**) annual payment updates ("**APUs**"), except the final data set showing that staff had received required vaccinations for influenza for the 2016-2017 influenza season.  Hazard ARH's Infectious Disease Coordinator (**ICD**) resigned from her employment in early March 2017 before that last data set was available.

22.    There was some difficulty acquiring a new "Grid" security card necessary for another employee to enter the influenza vaccination data in the government database.  That card was finally procured on the afternoon of May 15, 2017.

23.    The published deadline to enter that data was 11:59 p.m. Pacific time on May 15, 2017.  When an employee tried to enter the data on the National Healthcare Safety Network (**NHSN**) website a little after 4:00 p.m. Eastern time that day, the system would not accept 2016-17 data[5] but would only accept data for the next time period.

---

[4] *Id.* at 45968.

[5] The data is submitted to the NHSN which then sends it to CMS.  According to the NHSN FAQs "the final data are 'frozen' at midnight on the day of reporting deadline and sent to CMS the next business day."  MAC Hearing Exh. C-6.

24.     Hazard ARH was subsequently given notice that (1) its Fiscal Year 2018 IPF Prospective System APU was reduced 2 percentage points; (2) its Calendar Year 2018 Outpatient Prospective Payment System (**OPPS**) APU was reduced by 2 percentage points; and (3) its FY 2019 Hospital Inpatient Quality Reporting (**IQR**) PPS APU was reduced by one-quarter; and the hospital was excluded from participation in the hospital value based purchasing program for FY 2019. The total cumulative effect of these penalties was approximately $562,000.

25.     Hazard ARH was later able to file the influenza vaccination data on the NHSN site but for historical purposes only because the NHSN did not forward any data entered after the May 15 midnight deadline to CMS.

26.     Hazard ARH's first requested "Reconsideration" of CMS's decisions that the Hospital had not met the requirements of the Quality Reporting Program under 42 C.F.R. §§419.46(f); 412.434 and 412.140(e). Hazard ARH resubmitted the data with its timely filed requests for Reconsideration, demonstrating that it was in compliance with the quality standards.

27.     CMS did not address Hazard ARH's issues or concerns in its form letters responses to those Reconsideration requests. Hazard ARH was, however, in complete compliance with all substantive requirements during the reporting period. The only problem was the fact that it had been unable to file the last set of data before the May 15, 2017 midnight deadline due to a problem with the government's computer system. Given these circumstances the PRRB should have reversed the arbitrary Reconsideration determinations.

28.     Hazard ARH timely filed an appeal with the PRRB and all jurisdictional requirements were met.  The PRRB conducted a virtual hearing on June 25, 2020.

29.     In *PAMC Ltd. v. Sebelius*, 747 F.3d 1214 (9th Cir. 2014), the Secretary told the Court that it had created an administrative appeals process for providers to seek reconsideration of a CMS determination that they did not meet quality measure data requirements.  According to the Secretary "Relief pursuant to this process is available if a hospital can show either that it actually met the requirements, **or** that CMS or its contractors caused the error in in its data submission."[6]

30.     It was undisputed that Hazard ARH's personnel were vaccinated as required and all other requirements of the quality program were met.

31.     Hazard ARH made it clear from the very start that the NHSN system was not working properly on May 15, 2017, and would not accept the tendered data.  But even though CMS has access to its contractor's data entry system, it did not offer one iota of proof that the system was working properly on May 15, 2017.  This was despite the fact that CMS has said: "When a hospital reports data processing and communication errors, the errors are thoroughly researched."[7]

32.     It was undisputed but that Hazard ARH employees tried to enter the required data set onto the system before the May 15 midnight deadline.

---

[6] Brief for Appellee, K. Sebelius, 2013 WL 3293875 at #15 (*emphasis added*).
[7] 71 Fed. Reg. 48041 (8/18/16).

33.     After finding initially "[t]he facts in these cases are not in dispute",[8] however, and contrary to the testimony of Hazard ARH's witnesses and with no evidence from the government, the PRRB speculated as to reasons the Hazard ARH employees might have made a mistake in trying to enter the data.  For instance, the Board guessed that maybe monthly plans might not have been previously entered into the system and "that the lack of the requisite monthly plans was the reason Mr. Hensley was not seeing a function to allow him to enter the raw data that was to be submitted on May 15, 2017."[9]  Based upon speculation, the PRRB concluded that Hazard ARH "was at fault for its failure to timely submit said data."[10]

34.     The PRRB palpably erred with its finding that there was "no evidence of system failure or error on the part of CMS or its contractor that contributed in any manner to Hazard's failure to timely submit its Influenza Vaccination Data through NHSH."[11]

35.     The testimony of both Hazard ARH's witnesses that the system would not accept the data ten hours before the midnight deadline gave unrebutted evidence to that fact.

36.     The government simply failed to put on any evidence to the contrary.

37.     The PRRB's speculation that Hazard ARH must have failed to have previously submitted a monthly plan and that may have caused the system to somehow fail was not evidence, especially given the fact that the workings of CMS's  data entry system was something entirely within the agency's purview and control.

---

[8] Exh. A, PRRB Decision 1, p. 6.
[9] *Id.* p. 12.
[10] *Id.* p. 12.
[11] *Id.* p. 13.

9

38.     The PRRB decided that Hazard ARH did not demonstrate that CMS or its contractor caused the error in the data submission process that kept the data from being timely submitted.  The PRRB then erroneously concluded that was the only issue to be resolved.[12]

39.     CMS has made various statements in the past to the effect that consideration for non-compliance be given where the provider has a "valid and justifiable excuse"[13] or where there are "extenuating circumstances"[14] when Reconsideration was requested.

40.     CMS most recently has clarified the distinction between (1) requests for additional time to make a request for reconsideration; and (2) a timely filed request for reconsideration asking CMS to reverse its initial finding of non-compliance due to exceptional or extenuating circumstances.  In the first instance reversal is warranted (1) if the provider provides proof of compliance with all the requirements during the reporting period; **or** (2) provides adequate proof of a "valid or justifiable excuse for non-compliance" if the provider was not able to comply with requirements during the reporting period.[15]

41.     The fact of the matter is that as a hospital in Eastern Kentucky, serving a high proportion of Medicaid and Medicare patients, Hazard ARH did everything it could to comply with the quality guidelines.  The PRRB applied, however, a "Gotcha" standard rather than in keeping with CMS's stated goals and standards generally applicable to requests for reconsideration.

---

[12] Decision 2 at p. 19.
[13] 78 Fed. Reg. 50886 (8/19/2013).
[14] 79 Fed. Reg. 50313 (8/22/2014).
[15] *See* e.g. 90 Fed. Reg. 148, 37678 at 37707 (August 5, 2025).

42.     CMS recognizes that Electronic Health Record (**EHR**) downtime, including those occurring as a result of vendor outages, which previously would have been considered to be "extenuating" circumstances can also be considered to be "extraordinary circumstances"[16]

43.     CMS conflates "extenuating" and "extraordinary" circumstances.  CMS may also excuse non-compliance in circumstances where the provider was not able to comply with the requirements during the reporting period if the provider provides "adequate proof of a valid or justifiable excuse for non-compliance . . . ."[17]

44.     The regulations provide for waivers due to extraordinary circumstances "beyond the control of the hospital" such as when there is a "systemic problem with CMS's data collection system." 42 C.F.R. §140(c)(2)(ii). [18]  Similarly, 42 C.F.R. §419.46(d) provides for exceptions when "a system's problem with one of CMS' data collection system directly or indirectly affects data submission."

45.     The regulations do not stop there.  They also provide for reconsideration to be given after the fact.  For instance, 42 C.F.R. §412.140(e) provides for Reconsideration and Appeals if the hospital submits certain information demonstrating substantive compliance

---

[16] *See* 90 Fed. Reg. 148, 37678 at 37708-37709 (August 5, 2025).
[17] 90 Fed. Reg. 148, 37678 at 37709 (August 5, 2025), see also 75 Fed. Reg. 45872 at 45919 (August 6, 2014).  (FY 2015 IRF PPS Final Rule.)
[18] The PRRB considered the version of 42 C.F.R. §412.140 effective October 1, 2016, which does not contain subsection (c)(2)(i) & (ii).  The version introduced in the 2020 hearing was effective August 14, 2017 with subsection (c)(2)(i) & (ii).  Provider's Optional Responsive Position Paper, Exh. P-14 (3/12/2020).

and a detailed explanation of why the hospital believed that it complied with the requirements of the Hospital IQR Program" for its technical noncompliance.

46.     The same dichotomy is evident in 42 C.F.R. §419.46(d) & (f).   *See* e.g,. *Landmark Hosp. v. Azar*, 442 F. Suupp.3d 327, 333 (D.C. Dist. Ct. 2020).

47.     In Decision 2 the PRRB found that with the difficulties encountered by Hazard ARH in procuring a new Grid card it could have requested an exception pursuant to 42 C.F.R. §412.140(c)(2) or an exemption pursuant to 42 C.F.R. §419.46(d) for these "extraordinary" circumstances.[19]   However, the PRRB would only allow for an exception or exemption if requested before the data filing deadline.

48.     The PRRB failed to give any weight, let alone great weight to interpretative rules, general standards of policy and rules of agency organization, procedure, or practice established by CMS.  42 C.F.R. §405.1867.

<u>**COUNT I**</u>

49.     Hazard ARH hereby incorporates by reference Paragraphs 1 through 48 as though set forth herein.

50.     As a matter of law, the evidence in the administrative record does not permit the PRRB to make the decision it did.  The testimony of the ARH employees and corroborating physical evidence shifted the burden of proof to the agency.  The government then failed to offer any evidence that its data entry system was working properly and could have accepted Hazard ARH's data sets during the evening of May 15, 2017.

---

[19] Decision 2, p. 18.  Note:  The PRRB, in what appears to be a typographical error, refers four times to 42 C.F.R. §410.140.  Presumably 42 C.F.R. 412.140 was intended.  *Id.* pp. 15 & 18.

51.     The PRRB's Decision 2 was not supported by substantial evidence and is therefore arbitrary and capacious, an abuse of discretion, or otherwise not in accordance with law and in violation of 5 U.S.C. §706(2)(A).

## COUNT II

52.     Hazard ARH hereby incorporates by reference Paragraphs 1 through 51 as though set forth herein.

53.     An exception or exemption should have been granted as Hazard ARH was fully in compliance with program requirements except for the timely entry of its last data set on the government system.

54.     Whether the standard was "extenuating circumstances"; "extraordinary circumstances"; or "justifiable excuse for noncompliance", Hazard ARH's circumstances met the standard.

55.     The PRRB misapplied the regulations applying a totally unyielding, strict compliance standard.

56.     The goals of the Hospital Quality Reporting Program were met by Hazard ARH. Healthcare personnel were properly vaccinated as required.

57.     The Reconsiderations and both PRRB's Decisions are arbitrary and capricious, an abuse of discretion, not in accordance with law, and therefore in violation of the 5 U.S.C. §706(2)(A).

13

**REQUEST FOR RELIEF**

58.    Hazard ARH requests an Order:

A.    Declaring invalid and setting aside the Secretary's Final Decision and reversing the Decision of the PRRB;

B.    Directing the Secretary to recalculate Hazard ARH's FYEs 2018 and 2019 and Calendar Year 2018 Medicare reimbursements consistent with the full application of the annual APU updates, and make prompt payment of any additional amounts due the Hospital, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.    Requiring the Secretary to pay legal fees and costs incurred by Hazard ARH; and

D.    Providing such other relief as the Court may consider appropriate.

Respectfully submitted,


*/s/ Stephen R. Price, Sr.*
Stephen R. Price, Sr.
sprice@wyattfirm.com
Jennifer L. Wintergerst
jwintergerst@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
400 West Market Street
Suite 2000
Louisville, KY  40202
502-589-5235


Dated:  September 8, 2025

102102794.1

14