THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| APPALACHIAN REGIONAL HEALTHCARE, INC.<br>2260 Executive Drive<br>Lexington, Kentucky 40505<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, Acting Secretary,<br>United States Department of<br>Health and Human Services<br>200 Independence Ave. S.W.<br>Washington, D.C. 20201, not individually<br>but in his official capacity as acting<br>Secretary, United States Department of<br>Health and Human Services<br><br>Serve: Xavier Becerra<br>    The United States Department of<br>    Health and Human Services<br>    200 Independence Ave., S.W.<br>    Washington, D.C. 20201<br><br>    Daniel J. Barry<br>    Acting General Counsel<br>    The United States Department of<br>    Health and Human Services<br>    200 Independence Ave., S.W.<br>    Washington, D.C. 20201<br><br>    Merrick Garland<br>    United States Attorney General<br>    Department of Justice<br>    950 Pennsylvania Avenue, N.W.<br>    Washington, D.C. 20530-0001 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. _____ |

# Exhibit B

| Carlton S. Shier, IV | ) |
| Acting United States Attorney | ) |
| Eastern District of Kentucky | ) |
| 260 W. Vine Street, Suite 300 | ) |
| Lexington, KY  40507-1612 | ) |
|  | ) |
| Civil Process Clerk | ) |
| United States Attorney's Office | ) |
| Eastern District of Kentucky | ) |
| 260 W. Vine Street, Suite 300 | ) |
| Lexington, KY  40507-1612 | ) |
|  | ) |
| Defendant. | ) |

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT**

**NATURE OF ACTION**

1. This case concerns the federal agency's decision to reduce the hospital's Medicare prospective payment system's two percent annual payment updates (**APUs**) and to exclude the hospital from participating in a hospital value based purchasing program. The hospital complied with all APU requirements but was unable to timely enter the last part of the data showing its healthcare personnel had been properly vaccinated when the government website stopped accepting that data ten hours before the announced midnight deadline. This is an appeal from a decision of the Provider Reimbursement Review Board (**PRRB**) which applied the wrong section of its regulation again as caused its reversal in *Pam Squared At Texarkana, LLC v. Azar*, 2020 WL364782 (D.C. Dist. 2020), and *Landmark Hospital of Salt Lake City*, 2020 WL 999 454 (D.C. Dist. 2020);  while also improperly assigning the

2

wrong burden of proof to the hospital and, in the absence of proof from the government, based its decision on its own speculations.[1]  A copy of that decision is attached as Exhibit A.

## JURISDICTION AND VENUE

2.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("**APA**"), 5 U.S.C. § 551 et seq.

3.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(1).

4.      Venue is proper in this judicial district under 24 U.S.C. § 1395oo(f)(1).

5.      A reviewing court must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. §706(2)(A).

## PARTIES

6.      The Plaintiff Hospital in this action is Appalachian Regional  Healthcare, Inc. d/b/a Hazard ARH Regional Medical Center, Provider No. 18-0029 (hereafter "**Hazard ARH**").  This case involves Hazard ARH's Medicare reimbursement for FYEs 2018 and 2019, and Calendar Year 2018.

7.      The defendant is Xavier Becerra, sued in his official capacity as Secretary of the United States Department of Health and Human Services (**"Secretary"**), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors, and the Department and its components he oversees, as the context requires.

---

[1] Hazard ARH requested that the Administrator review the decision of the PRRB but the Administrator did not respond, making the decision of the PRRB the final Order of the Secretary after sixty days.

8.      The Centers for Medicare & Medicaid Services (**"CMS"**) is a component of the Secretary's agency with responsibility for day-to-day operation and administration of the Medicare program.  References to CMS herein are meant to refer to the agency and its predecessors.

## BACKGROUND

9.      Medicare is a federally-funded health insurance program primarily for individuals age 65 or older.

10.      CMS has implemented its National Quality Strategy with the goal of promoting "better healthcare for individuals, better health for populations, and lower costs for healthcare services."[2]  In pursuit of that goal CMS has sought "to collect data in a manner that balances the need for information related to the full spectrum of quality performance and the need to minimize the burden of data collection and reporting."[3]

11.      Thus, for example, the Influenza Vaccination Coverage among healthcare personnel (**HCP**) reporting at issue here was extended to inpatient psychiatric hospitals in FY 2017 because CMS "believe[d] that the adoption of a measure that assesses influenza vaccination among HCP in the IPF setting not only works toward improving the rate at which non-vaccinated HCP manifest symptoms as compared to vaccinated HCP, but also affords consumers and others useful information in choosing among different facilities."[4]

---

[2] 79 Fed. Reg. 45962 (8/6/14).
[3] *Id.* at 45967.
[4] *Id.* at 45968.

12.     Hazard ARH is a Medicare participating, general acute care hospital with an adjacent inpatient psychiatric facility, located in the city of Hazard in Perry County, Kentucky.[5]  In the case-at-bar, Hazard ARH had previously submitted all its quality data to satisfy the relevant Prospective Payment System annual payment updates ("**APUs**"), except the final data set showing that staff had received required vaccinations for influenza for the 2016-2017 influenza season.  Hazard ARH's Infectious Disease Coordinator (**ICD**) resigned from her employment in early March 2017 before that last data set was available.

13.     There was some difficulty acquiring a new "Grid" security card necessary for another employee to enter the influenza vaccination data in the government database.  That card was finally procured on the afternoon of May 15, 2017.

14.     The published deadline to enter that data was 11:59 p.m. Pacific time on that day.  When an employee tried to enter the data on the National Healthcare Safety Network (**NHSN**) website a little after 4:00 p.m. Eastern time that day, the system would not accept 2016-17 data[6] but would only accept data for the next time period.

15.     Hazard ARH was subsequently given notice that (1) its Fiscal Year 2018 Inpatient Psychiatric Facility Prospective System APU was reduced 2 percentage points; (2) its Calendar Year 2018 Outpatient Prospective Payment System APU was reduced by 2 percentage points; and (3) its FY 2019 Hospital Inpatient Quality Reporting PPS APU was

---

[5] The PRRB erroneously assumed Hazard ARH also operated a long-term acute care hospital (**LTAC**).  Exh. A.  PRRB Dec. p. 2.

[6] The data is submitted to the NHSN which then sends it to CMS.  According to the NHSN FAQs "the final data are 'frozen' at midnight on the day of reporting deadline and sent to CMS the next business day."  MAC Hearing Exh. C-6.

reduced by one-quarter and the hospital was excluded from participation in the hospital value based purchasing program for FY 2019. The total cumulative effect of these penalties was approximately $562,000.

16.     Hazard ARH was later able to file the influenza vaccination data on the NHSN site but for historical purposes only because the NHSN did not forward any data entered after the midnight deadline to CMS.

17.     Hazard ARH also submitted the data with its timely filed  Requests for Reconsideration, demonstrating that it was in compliance with the quality standards.  CMS did not address Hazard ARH's issues or concerns in its form letter responses to those requests but simply denied relief even while concluding somewhat ironically, "Thank you for your participation in the IPF QRP."[7]

18.     Hazard ARH timely filed an appeal with the PRRB and all jurisdictional requirements were met.  The PRRB conducted a virtual hearing on June 25, 2020.

19.     In *PAMC Ltd. v. Sebelius*, 747 F.3d 1214 (9th Cir. 2014), the Secretary told the Court that it had created an administrative appeals process for providers to seek reconsideration of a CMS determination that they did not meet quality measure data requirements.  According to the Secretary "Relief pursuant to this process is available if a hospital can show either that it actually met the requirements, or that CMS or its contractors caused the error in in its data submission."[8]

---

[7] MAC Hearing Exh. 3 (2/5/18 Ltr. to ARH).
[8] Brief for Appellee, K. Sebelius, 2013 WL 3293875 at #15.

20.     It was not disputed that Hazard ARH's personnel were vaccinated as required and all other requirements of the quality program were met.

21.     Hazard ARH made it clear from the very start that the NHSN system was not working properly on May 15, 2017, and would not accept the tendered data. But even though CMS has access to its contractor's data entry system, it did not offer one iota of proof that the system was working properly on May 15, 2017. This was despite the fact that CMS has said: "When a hospital reports data processing and communication errors, the errors are thoroughly researched."[9]

22.     After finding initially "[t]he facts in these cases are not in dispute",[10] however, contrary to the testimony of Hazard ARH's witnesses, and with no evidence from the government, the PRRB speculated that monthly plans had not been previously entered into the system and "that the lack of the requisite monthly plans was the reason Mr. Hensley was not seeing a function to allow him to enter the raw data that was to be submitted on May 15, 2017."[11] Based upon that speculation, the PRRB concluded that Hazard ARH "was at fault for its failure to timely submit said data."[12]

23.     The PRRB palpably erred with its finding that there was "no evidence of system failure or error on the part of CMS or its contractor that contributed in any manner to Hazard's failure to timely submit its Influenza Vaccination Data through NHSH."[13]

---

[9] 71 Fed. Reg. 48041 (8/18/16).
[10] Exh. A, PRRB Dec. p. 6.
[11] *Id.* p. 12.
[12] *Id.* p. 12.
[13] *Id.* p. 13.

24.     The testimony of both Hazard ARH's witnesses that the system would not accept the data ten hours before the midnight deadline gave evidence to that fact.

25.     The government failed to put on any evidence to the contrary.

26.     The PRRB's speculation that Hazard ARH must have failed to have previously submitted a monthly plan and that may have caused the system to somehow fail was not evidence, especially given the fact that the workings of CMS's data entry system was something entirely within the agency's purview and control.

27.     The D.C. District Court has found two times now in similar cases that the PRRB, confused by the complexities of CMS's own regulations, applied the wrong regulation, and therefore acted arbitrarily and capriciously requiring reversal and remand.[14]

28.     The PRRB has again applied the wrong regulatory subsection to evaluate Hazard ARH's evidence.[15]  The PRRB considered the wrong subsections of two of the regulations, fixating on the "exception" and "extraordinary circumstances" provisions in 42 C.F.R. §419.46(d) (2018) and 42 C.F.R. §412.140(c)(2).[16]

29.     Thus the PRRB discussed extraordinary circumstances affecting an entire region or locale;[17] exceptions and systemic problems;[18] "exemptions" and CMS'

---

[14] *PAM Squared*, 2020 WL 364782; *Landmark Hospital*, 2020 WL 999454.
[15] *Landmark*, at *5.
[16] The third regulation here, 42 C.F.R. § 412.234, addresses reconsideration decisions and does not contain an exceptions provision.  Having put on its "extraordinary circumstances" blinders the PRRB ignored that regulation entirely.
[17] PRRB Dec. p. 5 text + n.35.
[18] *Id.* p. 6 text + n.43.

8

Extraordinary Circumstances Request Form;[19] to find no evidence of "extraordinary circumstances" "much less any evidence that Hazard ARH submitted a request for an extraordinary circumstances exception."[20]

30.     Hazard ARH filed, however, for reconsideration under a different subsection of the regulations, which the PRRB failed to consider.[21]

31.     CMS has made varied statements in the past that consideration for non-compliance be given where the provider has a "valid and justifiable excuse"[22] or where there are "extenuating circumstances"[23] when Reconsideration was requested.

32.     The fact of the matter is that as a hospital in Eastern Kentucky, serving a high proportion of Medicaid and Medicare patients, Hazard ARH did everything it could to comply with the quality guidelines. The PRRB applied the wrong subsection of the regulations and reviewed the evidence under a "Gotcha" standard rather than in keeping with CMS's stated goals.[24]

33.     Hazard ARH's first requested "Reconsideration" of CMS's decisions that the Hospital had not met the requirements of the Quality Reporting Program under 42 C.F.R. §§419.46(g); 412.434 and 412.140(e).  Those Reconsideration requests got only perfunctory

---

[19] *Id.* p. 7 + n.53.
[20] *Id.* p. 8 + n.55.  The PRRB discussed extraordinary circumstances again at length in its concluding footnotes 97 and 99.
[21] 42 C.F.R. §419.46(f) (2020); 42 C.F.R. §412.140( e) (2020); and 42 C.F.R. §412.434.
[22] 78 Fed. Reg. 50886 (8/19/2013).
[23] 79 Fed. Reg. 50313 (8/22/2014).
[24] The provision for Exceptions is relevant to the extent that it makes it clear the filing deadlines are not statutorily mandated and that they do not have to be applied strictly and mindlessly as they were applied here.

review. No relevant or discernable standards were applied and the PRRB should have reversed the Reconsideration decisions on that basis alone.

**COUNT I**

34. Hazard ARH hereby incorporates by reference Paragraphs 1 through 33 as though set forth herein.

35. The PRRB misapplied applicable regulations reading into 42 C.F.R. §419.46(g)(1) an "extraordinary circumstances" standard.[25] The PRRB then excused the government's failure to rebut the testimony of the hospital's witnesses with speculation of its own making.

36. Both the Reconsiderations and the PRRB's Decision are arbitrary and capricious, an abuse of discretion, not in accordance with law, and therefore in violation of the APA.

37. The goals of the Hospital Quality Reporting Program were met by Hazard ARH. Healthcare personnel were properly vaccinated as required. Hazard ARH should not have been penalized in this manner because of a data entry problem with the government's own system[26].

---

[25] *Id.* p. 13, n. 97. The manner in which the regulations are constantly changing is evidenced by the fact that the PRRB cited the version of 42 C.F.R. §419.46 effective January 1, 2021 where the Reconsideration provision is in subsection (g), while in the March 9, 2020 version attached as Exhibit P-13 to the Provider's Optional Responsive Position Paper is subsection (f).

[26] Even this Court's Local Rule D.2.h recognizes that technical failures can occur with electronic filings and the Rule makes allowances in those circumstances.

10

## REQUEST FOR RELIEF

38.     Hazard ARH requests an Order:

A.     Declaring invalid and setting aside the Secretary's Final Decision and reversing the Decision of the PRRB;

B.     Directing the Secretary to recalculate Hazard ARH's FYEs 2018 and 2019 and Calendar Year 2018 Medicare reimbursements consistent with the full application of the annual APU updates, and make prompt payment of any additional amounts due the Hospital, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.     Requiring the Secretary to pay legal fees and costs incurred by Hazard ARH; and

D.     Providing such other relief as the Court may consider appropriate.

Respectfully submitted,

/s/   Stephen R. Price
Stephen R. Price
sprice@wyattfirm.com
Jennifer L. Wintergerst
jwintergerst@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
400 West Market Street
Suite 2000
Louisville, KY  40202
502-589-5235

Dated:  May 20, 2021

100498436.1

11